# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MARIO CHAGOYA,

                            Petitioner,

v.                                                    Case No. 22-CV-356-JPS

UNITED STATES OF AMERICA,

                            Respondent.                    **ORDER**

## 1.    INTRODUCTION

Now before the Court is Petitioner Mario Chagoya's ("Petitioner")
amended motion to vacate, set aside, or correct his sentence under 28 U.S.C.
§ 2255. ECF No. 15. In an order dated December 2, 2022, the Court
interpreted that amended motion as setting forth six (6) grounds for relief:

> **Ground One:** Attorney [Jeffrey] Jensen [("Jensen")] provided
> ineffective assistance (1) during plea negotiations and (2) at
> sentencing with respect to the inclusion and consideration of
> conspiracy conduct in such proceedings;

> **Ground Two**: Attorney Jensen provided ineffective
> assistance (1) during plea negotiations and (2) at sentencing
> by failing to object to the application of [United States
> Sentencing Guideline ("U.S.S.G.")] § 2D1.1(b)(1)'s firearm
> enhancement;

> **Ground Three**: Attorney Jensen provided ineffective
> assistance (1) during plea negotiations and (2) at sentencing
> by failing to object that U.S.S.G. § 1B1.3 is unconstitutional,
> and by failing to directly appeal on the same basis;

> **Ground Four**: Attorney Jensen provided ineffective
> assistance by failing to appeal the magistrate judge's ruling
> on [Petitioner's] motions to suppress and motion for a *Franks*
> hearing;

> **Ground Five**: *United States v. Taylor*, [142 S. Ct. 2015] (2022), is both retroactively applicable and applicable to [Petitioner's] criminal case, and as a result barred application of the firearm enhancement in calculating the [potential] sentence for [Petitioner's] inchoate drug offense; and
>
> **Ground Six**: U.S.S.G. § 1B1.3 is unconstitutional.

ECF No. 17 at 20–21. Respondent the United States of America ("Respondent" or "the Government") opposes the motion, which is fully briefed. ECF Nos. 20, 30, 34.

Additionally before the Court are Petitioner's motions to amend his § 2255 motion and for the Court to proceed to ruling. ECF Nos. 33, 36. For the reasons discussed herein, the Court will deny the motion to amend, will deny as moot the motion to proceed to ruling, and will deny Petitioner's amended § 2255 motion on its merits and dismiss this case with prejudice.

## 2. BACKGROUND

### 2.1 The Facts Giving Rise to Petitioner's Criminal Case

In December 2019, a grand jury returned an Indictment charging Petitioner with violations of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) for attempted possession with intent to distribute cocaine; 18 U.S.C. §§ 922(g)(1) and 924(a)(2) for possession of firearms as a felon; and 18 U.S.C. § 924(c)(1)(A)(i) for possession of firearms in furtherance of cocaine distribution. *United States v. Mario Chagoya*, Case No. 19-CR-246-JPS (E.D. Wis.), ECF No. 1 (hereinafter "CR-ECF"). Petitioner was alleged to have engaged in gang-related drug trafficking in and between Wisconsin and Illinois. CR-ECF No. 64 at 5. He was arrested in October 2019 after allegedly attempting to pick up a package known by case agents to contain cocaine. *Id.* at 7. A search of Petitioner's residence revealed common drug-trafficking supplies, four firearms, and ammunition. *Id*. A review of his

seized phone revealed communications "regarding cocaine shipments" and Petitioner's "guy (firearm supplier)," as well as photos of several of the firearms seized in the search of Petitioner's residence. *Id.* Additionally, a court authorized GPS tracking of Petitioner's vehicle, and information about his movements on October 11, 2019 was later used in this case. *Id.*

## 2.2 Procedural Background and Motions to Amend and Proceed to Ruling

### 2.2.1 Pre-Plea

Petitioner originally entered pleas of not guilty to all counts of the Indictment. CR-ECF No. 6. At this time, he was represented by Attorney Thomas E. Hayes ("Hayes"). CR-ECF No. 10. Hayes moved to suppress both "the fruits of the information gathered . . . during the execution of the . . . GPS warrant for the Durango vehicle," CR-ECF No. 15, and "all items . . . including firearms . . . that were seized" in the search of Plaintiff's residence, CR-ECF No. 16. Hayes additionally moved for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). CR-ECF No. 17. Magistrate Judge William E. Duffin recommended denial of these motions. CR-ECF No. 27. While the recommendation was pending, Attorneys Craig Powell ("Powell") and Michael Hart ("Hart"), appeared as retained counsel to represent Petitioner. CR-ECF Nos. 29, 31. Hayes then moved to withdraw from representing Petitioner, which motion Magistrate Judge Duffin granted. CR-ECF No. 36.[1] This Court then adopted Magistrate Judge

---

[1] A few days after moving to withdraw but before his withdrawal motion was granted, Hayes moved for de novo review of Magistrate Judge Duffin's report and recommendation. The Court denied Hayes's motion as moot but deferred to Hart the matter of "address[ing] any issues [Petitioner] may have with the recommendation or other orders of [Magistrate] Judge Duffin." ECF No. 37 at 1 n.1.

Duffin's recommendations in full after Hart failed to timely object to them. CR-ECF Nos. 37, 38.

Several months later, Attorneys Hart and Powell moved to withdraw after Petitioner terminated the representation. CR-ECF No. 40 at 2. Magistrate Judge Duffin granted the motion, and Attorneys Hart and Powell were terminated as retained counsel. CR-ECF No. 42.

### 2.2.2 Jensen's Appearance & Plea Negotiations

In July 2020, Jensen appeared to represent Petitioner. CR-ECF No. 43. He moved for Petitioner to be released on bond, CR-ECF No. 44, but Magistrate Judge Nancy Joseph denied the motion, deeming Petitioner's "continued detention . . . appropriate." CR-ECF August 28, 2020 text order. Meanwhile, this Court amended the trial scheduling order, instructing that, "[s]hould the defendant wish to resolve this case short of trial and remain eligible for acceptance of responsibility credit," a plea agreement would need to be filed by November 17, 2020. CR-ECF No. 47 at 5–6. Petitioner maintained his not guilty pleas, and the parties did not meet this deadline. CR-ECF No. 57 at 5.[2]

Instead, Jensen moved for early disclosure, or alternatively an in camera examination, of the grand jury transcript, CR-ECF No. 48, which motion the Court referred to Magistrate Judge Duffin, CR-ECF November 5, 2020 text order. Magistrate Judge Duffin denied the motion as untimely, noting that the deadline for pretrial motions had elapsed over ten months prior, before Jensen had even appeared in the case. CR-ECF No. 50. In the

---

[2] Notwithstanding having missed this deadline, the United States Probation Office ("USPO") nevertheless factored a two level decrease for "acceptance of responsibility" into the calculation of Petitioner's offense level and the applicable sentencing guidelines. CR-ECF No. 64 at 9.

meantime, the Government moved to dismiss without prejudice Count Three of the Indictment, which charged Petitioner with violating 18 U.S.C. § 924(c)(1)(A)(i) for possession of firearms in furtherance of cocaine distribution, and the Court granted the motion. CR-ECF Nos. 1, 49, 54.

The parties engaged in plea agreement negotiations. According to Jensen, who at the Court's direction filed an affidavit responding to the Petitioner's allegations of ineffective assistance of counsel in the instant case, resolving the matter by plea was favorable because "[i]f an agreement had not been reached, the [G]overnment intended to file a § 851 sentencing information [for] which, if . . . convicted, [Petitioner's] sentence would have a minimum mandatory twenty years, and it could have been as long as life in prison." ECF No. 18 at 1–2; ECF No. 31 at 14 (Petitioner's response to Jensen affidavit, stating that "Jensen sent a letter to inform me . . . that if I do not accept the plea . . . agreement by November 10, 2020, the Government will file a 851 information"). Jensen conveyed this perspective to Petitioner in early November 2020. ECF No. 18 at 2; ECF No. 31 at 14. Petitioner avers that on November 13, 2020, Jensen informed him that Respondent had "offered to amend the charge, from 'attem[pted]' possession, to alleged conspiracy," but that Petitioner conveyed that he "was never part of a conspiracy" and did not agree to amend the charge. ECF No. 30 at 5.

In early December 2020, the parties appeared before the Court for a final pretrial conference. CR-ECF No. 56, 57. The Court noted that there was only one motion in limine pending,[3] submitted by the Government, which

---

[3]Respondent erroneously asserts that "the parties had filed motions in limine," plural. ECF No. 20 at 5.

the Court indicated "should be granted," meaning that the Government would be permitted to present "evidence of similar transactions" "engaged in" by Petitioner in order to "establish[] a mode of operation." CR-ECF No. 57 at 3–4.

In January, Jensen contacted the Government to request that conspiracy-related conduct be omitted from the factual background section of the attachment to the proposed plea agreement. ECF No. 20-1 at 1 ("[Petitioner] also objects to the "Background" paragraph of Attachment A which talks about the Tirado conspiracy. If you could remove that, that would be great."); *see also* ECF No. 18 at 3 ("[Petitioner] expressed several objections [to a proposed plea agreement], which I conveyed to the Government."). The Government complied, omitting from the plea agreement any reference to "the Tirado conspiracy." CR-ECF No. 58 at 15–17; ECF No. 18 at 3 ("[T]he [G]overnment . . . conceded to [Petitioner's] objections. The [G]overnment removed the first paragraph (concerning the Tirado conspiracy) from the appendix . . . .").

In February 2021, the parties filed a plea agreement indicating that Petitioner had agreed to plead guilty to Count One—attempt to possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). CR-ECF No. 58. The Government agreed to move to dismiss the remaining count (Count Two). *Id.* at 3. In signing the plea agreement, Petitioner affirmed that he entered into it "freely and voluntarily," that Jensen had "reviewed every part of [it] with" Petitioner and "advised [Petitioner] of the implications of the sentencing guidelines," and that Petitioner was "satisfied that [Jensen] ha[d] provided effective assistance of counsel." *Id.* at 14.

In signing, Petitioner also affirmed that he reviewed and understood the implications of the following provisions:

- That "the sentencing guidelines recommendations contained in th[e] agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence" outside of that range, *id.* at 4;

- That "pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty," *id.* at 5;

- That the parties would "recommend to the sentencing court that a two-level increase under Sentencing Guidelines Manual § 2D1.1(b)(1) is applicable to the offense level for the offense charged in Count One because four firearms were used or possessed in connection with the offense," *id.* at 6[4];

- That "neither the sentencing court nor the [USPO] is . . . bound by" the plea agreement, *id.*; and

- That the sentencing court would "be guided by the sentencing guidelines" but not "bound by" them, *id.* at 6–7.

Petitioner's signature also confirmed that he "knowingly and voluntarily waive[d] his right," both to "appeal his conviction or sentence" and to challenge them "in any post-conviction proceeding, including . . . a motion pursuant to 28 U.S.C. § 2255." *Id.* at 10. This appellate waiver

---

[4] *See also* ECF No. 20-1 ("[Petitioner] won't object to the two points for the gun . . . .").

expressly did not extend "to an appeal or post-conviction motion based on . . . ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing." *Id.* It did, however, expressly extend to any claim that "the statutes or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional" and any claim that "the conduct to which the defendant has admitted does not fall within the scope of the statutes or Sentencing Guidelines." *Id.*

The parties then appeared before Magistrate Judge Duffin for a change of plea hearing. CR-ECF No. 59. Petitioner entered a plea of guilty to Count One. *Id.* During this proceeding, Petitioner confirmed that he had "discussed the charges in the [Indictment] . . . with" Jensen and that he had been "satisfied" with Jensen's representation thus far. CR-ECF No. 67 at 7. Petitioner also confirmed that he had "read and discuss[ed] the plea agreement with . . . Jensen before" signing it, that he understood its terms, and that no one had "made any promise or assurance" to him beyond that which was conveyed in the plea agreement itself "to get [Petitioner] to accept" it. *Id.* at 8–9. Defendant agreed that he was "pleading guilty because [he was] guilty." *Id.* at 10.

Magistrate Judge Duffin confirmed that Petitioner understood that the offense to which he was pleading guilty was "knowingly and intentionally attempt[ing] to possess with intent to distribute . . . 500 grams or more of a mixture and substance involving cocaine." *Id.* at 11. Judge Duffin also recited the elements of the offense. *Id.* at 13.

Next, Magistrate Judge Duffin discussed the implication of the Advisory Sentencing Guidelines. *Id.* He confirmed that Petitioner understood that his sentence "w[ould] be determined by a combination of Advisory Sentencing Guidelines, possible authorized departures from

those guidelines, and other statutory sentencing factors." *Id.* Petitioner also confirmed that he understood that "the sentence that [this Court would] ultimately impose[] may be different from any estimate" Jensen could provide based on the guidelines. *Id.* at 14. The Government also explicitly noted that the plea agreement included an "appellate waiver." *Id.* at 16.

Magistrate Judge Duffin recommended to this Court that Petitioner's plea be accepted. CR-ECF No. 60. The Court adopted this recommendation and set the matter for sentencing. CR-ECF No. 63 and March 1, 2021 text order.

In the meantime, the USPO prepared a presentence investigation report ("PSI"). CR-ECF No. 64. It noted that

> [t]he guideline for a violation of 21 U.S.C. § 841(a)(1) offenses is found in USSG § 2D1.1 and is based on the amount of substances involved. Law enforcement recovered 2.2 kilograms of cocaine which [Petitioner] attempted to retrieve. There was further evidence that [Petitioner] or his co-conspirators received 16 additional packages . . . similar in weight, and many were sent to the same alias . . . . [F]our kilogram wrappers were recovered from [Petitioner's] residence, and another was recovered from his trash. The government has indicated it can be established that [Petitioner] is responsible for the distribution of at least five kilograms of cocaine. Based on [the foregoing], . . . that estimate appears to be conservative and reasonable. Therefore, the recommended base offense level is 30 pursuant to USSG § 2D1.1(c)(5).

*Id.* at 8–9. The PSI also noted that "a two level enhancement [wa]s appropriate" under USSG § 2D1.1(b)(1) due to law enforcement's recovery of four firearms from Petitioner's residence (at which residence drug trafficking supplies had also been recovered). *Id.* at 9.

Jensen, on Petitioner's behalf, objected to the PSI to the extent it used "the words 'conspirator' and 'conspiracy.'" CR-ECF No. 64-1 at 2 ("He is not charged with conspiracy, and he was not part of a conspiracy."). The USPO maintained that its use of the terms "conspirator" and "conspiracy" in the PSI were appropriate. *Id.* Jensen acknowledged that, in any event, this issue "d[id] not impact the advisory guideline range." *Id.*

### 2.2.3 Sentencing

In his sentencing memorandum, Jensen stressed to the Court that "only the [October 11, 2019 package of cocaine] ought to be attributed to [Petitioner]." CR-ECF No. 66 at 2. Jensen argued that "the fact that . . . [other] packages" investigated "were similar to the October 11th package" was "insufficient to permit an inference that th[ose] . . . packages" also contained cocaine, or, said otherwise, was "insufficient to show that the other incidents were part of a continuing course of conduct" on Petitioner's part. *Id.*; *see id.* at 4 ("[I]t is insufficient evidence to demonstrate that the other incidents were relevant conduct for the purposes of the sentencing guidelines.").

The parties appeared before this Court for sentencing in July 2021. CR-ECF No. 71. Jensen maintained that "only 2 to 3.5 kilograms of cocaine should be attributed to [Petitioner] as relevant conduct" such that Petitioner's base offense level, for advisory guideline purposes, should be lower than that which the USPO calculated. CR-ECF No. 75 at 5; CR-ECF No. 64-1 at 5–6 (Defendant's objection to PSI). Nevertheless, the Court disagreed, overruled Petitioner's objection to the PSI on this basis, and stated that there were "a lot of additional circumstances" from which Petitioner's participation in something beyond a single 2.2-kilogram drug transaction could be inferred. CR-ECF No. 75 at 11–13. Separately, however,

the Court noted at the conclusion at the hearing that it "didn't rely on" any of the conspiracy-related facts to which Petitioner objected because they "didn't affect the [applicable] guideline." *Id.* at 34.

The parties jointly recommended a below-guidelines sentence; the Government requested nine years' incarceration, and Petitioner requested five. *Id.* at 18–20. Meanwhile, Petitioner's advisory guideline sentence range was 121 to 151 months' incarceration. CR-ECF No. 71 at 1. The Government emphasized that the plea agreement into which the parties entered was "quite generous" to Petitioner and that Petitioner otherwise "very well could have faced additional charges with higher mandatory minimums, with respect to cocaine trafficking, and he . . . could have . . . had . . . resurface . . . the charge with respect to the use of firearms in furtherance of drug trafficking," which would have carried a mandatory minimum consecutive term of imprisonment. CR-ECF No. 75 at 20. Respondent also noted the inclusion of an appeal waiver in the plea agreement. *Id.* ("[Petitioner] executed an appellate waiver as part of his plea agreement which, as the Court knows, is a substantial concession in my office's eyes.").

The Court imposed a sentence of 100 months' incarceration. CR-ECF No. 73 at 2. Notwithstanding the applicable appellate waiver, the Court also "advise[d] [Petitioner] of his right of appeal." CR-ECF No. 75 at 32. The Court instructed Jensen that "[i]n the event [Petitioner] elects to forego such an appeal, whether pursuant to the terms of the plea agreement or otherwise," Jensen should "formally notify the Court, whether by pleading or letter," signed by Petitioner, "indicating that you have discussed with your client his right of appeal and that he has elected to forego such an appeal." *Id.* at 33.

### 2.2.4  Post-Sentencing

Petitioner did not appeal his conviction and sentence. According to Jensen, he conferred with Petitioner—as instructed by the Court—regarding the possibility of appeal. ECF No. 18 at 8. Jensen avers that, at that time, Petitioner told him "that he did not want to appeal." *Id.* That same day, Jensen "sent [Petitioner] a letter . . . in which [Jensen] confirmed {Petitioner's] decision not to appeal." *Id.* "At the court's suggestion," Jensen included a signature line for Petitioner, but Petitioner "never returned the letter" to Jensen, signed or otherwise. *Id.* Likewise, Petitioner "never communicated to [Jensen] that he had changed his mind, and he wanted to appeal." *Id.*

But in March 2022, Petitioner filed his original § 2255 motion, the amended (and operative) version of which followed some six months later.

### 3.  STANDARD OF REVIEW

A person serving a sentence imposed by a federal court who is

claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). "Relief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States*, 723 F.3d 870, 878–79 (7th Cir. 2013)).

## 4.     LAW & ANALYSIS

### 4.1     Plea Appellate Waiver and its Application to Grounds Five and Six

The Court begins by addressing the fact that the plea agreement into which Petitioner entered included an appellate waiver which expressly extended to § 2255 motions, although it exempted from the waiver any "appeal or post-conviction motion based on . . . ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing." CR-ECF No. 58 at 10.

One would assume this to be a convenient point of argument for Respondent, at least with respect to the non-ineffective assistance of counsel grounds, since the waiver explicitly extends to "any claim that (1) the statutes or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which [Petitioner] has admitted does not fall within the scope of the statutes or Sentencing Guidelines." *Id.* Indeed, Petitioner's Ground Five asserts that *United States v. Taylor*, 142 S. Ct. 2015 (2022) (the "*Taylor* decision") is retroactively applicable and applicable to Petitioner's case, having the result of barring application of U.S.S.G. § 2D1.1(b)(1)'s firearm enhancement in calculating the base offense level for Petitioner's inchoate drug offense.[5] Meanwhile,

---

[5]The application of U.S.S.G § 2D1.1(b)(1)'s firearm enhancement increased Petitioner's base offense level by two points, in turn influencing his advisory sentencing range. ECF No. 64 at 9. That provision provides that "[i]f a dangerous weapon (including a firearm) was possessed" in connection with the "unlawful manufacturing, importing, exporting, or trafficking (including possession with intent to commit these offenses)" or the "attempt or conspiracy" to commit such offense, "increase [offense level] by 2 levels." U.S. Sent'g Guidelines Manual § 2D1.1 (U.S. Sent'g Comm'n 2023) (hereinafter "Guidelines Manual").

Case 2:22-cv-00356-JPS   Filed 03/06/24   Page 13 of 37   Document 41

Ground Six alleges that U.S.S.G. § 1B1.3 is unconstitutional as applied to Petitioner.[6] ECF No. 15 at 8.

Yet Respondent's original briefing lacks discussion of this issue. In Respondent's February 12, 2023 filing (later characterized by Respondent as "intended to be an answer," ECF No. 34 at 1, despite clearly being a brief), Respondent acknowledged the appellate waiver solely in the context of noting that Petitioner did not appeal his conviction and sentence to the Seventh Circuit. ECF No. 20 at 12. Respondent made no attempt there to assert that any of Petitioner's instant § 2255 grounds for relief were precluded by that waiver. In its next filing, Respondent asserted that it "d[id] not believe that additional briefing [wa]s necessary" and made no mention of the appellate waiver. ECF No. 34 at 1.

Perplexed by Respondent's seeming oversight in neglecting to attempt to persuade the Court to apply the appellate waiver that the Government went to great length to incorporate into the plea agreement, CR-ECF Nos. 67 at 16 and 75 at 20, the Court ordered the parties to file supplemental briefing "addressing the implication . . . if any, of the appellate waiver" in this case. ECF No. 37 at 1.[7] In response, Respondent

---

[6]U.S.S.G. § 1B1.3 allows a sentencing judge to consider uncharged conduct in adjusting a defendant's offense level if the conduct is "relevant." Guidelines Manual § 1B1.3; *United States v. Nania*, 724 F.3d 824, 831 (7th Cir. 2013). "[W]hen there is 'relevant conduct' that meets the requirements for an adjusted offense level, the court *must* make that adjustment . . . ." *Nania*, 724 F.3d at 831 (citing *United States v. Vizcarra*, 668 F.3d 516, 520 (7th Cir. 2012) and U.S.S.G. §1B1.3(a)). "For Guidelines purposes, 'relevant conduct' includes 'all acts or omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant.'" *Id.* (quoting U.S.S.G. § 1B1.3(a)(1)(A)).

[7]As this Court has noted regarding previous habeas opposition briefing in other cases before it, Respondent's briefing in this case "has evinced a reliance on the Court to complete [its] analysis." *Stallings v. Cromwell,* No. 22-CV-161-JPS, ECF

agrees that "the last two grounds advanced by [Petitioner] are arguably precluded by virtue of the appellate waiver." ECF No. 38 at 3. Nevertheless, Respondent "encourages the Court to reject [those grounds] on substance" because they "lack any basis in law or fact." *Id.* In other words, Respondent acknowledges the applicability of the appellate waiver to Grounds Five and Six but nevertheless recommends that the Court instead address those grounds on their merits.[8]

This suggestion disregards concepts of governmental economy and efficiency, judicial restraint, and constitutional avoidance, and the Court will reject it. The very first rule of the Federal Rules of Civil Procedure dictates that those rules be construed and employed to secure the "just, speedy, and inexpensive determination of every action and proceeding." When possible, Courts are to "avoid reaching unnecessary constitutional

---

No. 25 at 3 (E.D. Wis. Sept. 5, 2023). While § 2255's standard is difficult to meet, and Petitioner carries the burden of demonstrating why it is met, "Respondent's burden in habeas proceedings is not nothing." *Id.* at 3. Respondent should bear this in mind moving forward.

[8] The Court does not consider this a forfeiture or waiver of the appellate waiver issue. With respect to forfeiture, even if the Court considered Respondent to have forfeited the issue of the appellate waiver, the Court could still consider it. *United States v. Edwards*, 34 F.4th 570, 584 (7th Cir. 2022) ("[A] court may consider a forfeited ground 'founded on concerns broader than those of the parties'" and when "broader interests are at stake" (quoting *Wood v. Milyard*, 566 U.S. 463, 471 (2012) and *Bourgeois v. Watson*, 977 F.3d 620, 632 (7th Cir. 2020)). Here, those interests include concerns for governmental economy and efficiency, judicial restraint, and constitutional avoidance. And while "claims of waiver may themselves be waived," *United States v. Whitlow*, 740 F.3d 433, 439 (7th Cir. 2013) (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)), courts can "enforce an appellate waiver so long as the record clearly demonstrates that it was made knowingly and voluntarily," irrespective of a respondent's lacking briefing. *United States v. Black*, 783 F. App'x 629, 630 (7th Cir. 2019) (quoting *United States v. Perillo*, 897 F.3d 878, 883 (7th Cir. 2018) (rejecting the defendant's contention that "the government waived waiver in the district court by not discussing it in its response to his . . . motion")).

issues." *Hegwood v. City of Eau Claire*, 676 F.3d 600, 603 (7th Cir. 2012) (quoting *Doe v. Heck*, 327 F.3d 492, 527–28 (7th Cir. 2003)). "[I]t is 'a well-established principle governing the prudent exercise of th[e] Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case." *Bond v. United States*, 572 U.S. 844, 855 (2014) (citing *Escambia County v. McMillan*, 466 U.S. 48, 51 (1984) (per curiam) and *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)). And "in keeping with the notions of judicial restraint, federal courts should not reach out to resolve complex and controversial questions when a decision may be based on a narrower ground." *Allen v. Ferguson*, 791 F.2d 611, 615 (7th Cir. 1986)) (citing *Nat'l Metalcrafters v. McNeil*, 784 F.2d 817, 82–23 (7th Cir. 1986) and *Moore v. U.S. House of Representatives*, 733 F.2d 946, 954 n.39 (D.C. Cir. 1984)). These principles apply in the habeas context. *Smith v. Booker,* No. 05-CV-40291-FL, 2006 U.S. Dist. LEXIS 83057, at *25–26 (E.D. Mich. Nov. 14, 2006) ("Unless its jurisdiction is at stake, a federal district court on federal habeas review 'may take up issues in whatever sequence seems best, given the nature of the parties' arguments and in the interest in avoiding unnecessary constitutional decisions.'" (quoting *Aleman v. Sternes*, 320 F.3d 786, 691 (7th Cir. 2003))).

While Respondent and the Eastern District of Wisconsin's forty-some attorneys may have the luxury of spending precious governmental resources bargaining for incorporation of an appellate waiver in a plea agreement just to later shrug at the suggestion of its application, the Court does not have the same luxury. What is the point of using taxpayer dollars to spend expensive litigation time bargaining for an appellate waiver just to advocate for a ruling on the merits notwithstanding the conceded

applicability of the waiver? The Government made sure to make note of the applicability of the appellate waiver during the underlying criminal proceedings. CR-ECF No. 67 at 16; CR-ECF No. 75 at 20. In *this* case, it reaffirmed that it "required this concession in exchange for offering Chagoya a favorable plea." ECF No. 20 at 12. But now that the rubber has met the road, the Government, inexplicably, has little to say.

The Court declines Respondent's invitation to go straight to the merits of Grounds Five and Six, notwithstanding application of the appellate waiver in this case. Instead, the Court concludes that Grounds Five and Six are subject to dismissal as precluded by the appellate waiver.[9]

"The Seventh Circuit has repeatedly enforced terms of plea agreements in which defendants, in return for benefits under the agreement, waive their right to appeal." *Hernandez v. United States*, Nos. IP 00-1329-C H/G and 00-15-CR-1 H/F, 2001 U.S. Dist. LEXIS 2731, at *2–3 (S.D.

---

[9]The Court acknowledges that it allowed Grounds Five and Six to survive screening. ECF No. 17 at 21. With equal force it emphasizes that it previously pointed out the appellate waiver in Petitioner's plea agreement. ECF No. 14 at 5 n.1. The order in which it did so was vacated in part by the later screening order allowing Petitioner to proceed on Grounds Five and Six. On these facts, it is perhaps understandable that the Government believed the Court wanted it to address Grounds Five and Six on their merits. But it is nevertheless baffling why the Government does not here argue for application of the appellate waiver, despite carefully noting, at several points in the underlying criminal case, that it had bargained for that waiver.

Similarly, the operative screening order explicitly and purposefully called Respondent's attention to potential procedural default on Grounds Five and Six. ECF No. 17 at 19-20 (As to Ground Five: "[t]he failure to appeal on this basis does not bar this claim for now; the Court reserves the questions of whether the claim may be addressed on collateral review . . . and whether *Taylor* does in fact retroactively apply . . . for another day."); *id.* at 17 (As to Ground Six: "Though procedural default may bar relief . . . it is too early to tell whether Chagoya has in fact procedurally defaulted on this claim."). But Respondent does not bother to argue, even in the alternative, for application of procedural default to these claims.

Ind. Jan. 26, 2001) (citing *United States v. Williams*, 184 F.3d 666, 668 (7th Cir. 1999) and *United States v. Woolley*, 123 F.3d 627, 632 (7th Cir. 1997)). If the plea "agreement is voluntary, and taken in compliance with Rule 11 [of the Federal Rules of Criminal Procedure], then the waiver of appeal must be honored." *Williams*, 184 F.3d at 668 (quoting *United States v. Wenger*, 58 F.3d 280, 282 (7th Cir. 1995)). Such is the case here.[10]

As noted, Ground Five at bottom asserts that U.S.S.G § 2D1.1(b)(1)'s firearm enhancement—which applies when a dangerous weapon is used in connection with unlawful drug trafficking or the attempt or conspiracy to commit unlawful drug trafficking—should not apply to Petitioner in light of the *Taylor* decision. *See supra* note 5. Ground Five is therefore precluded by that portion of the appellate waiver that provides that Petitioner would not argue in a § 2255 motion that the "conduct to which [he] has admitted does not fall within the scope of the . . . Sentencing Guidelines." CR-ECF No. 58 at 10. Ground Six, as noted, asserts that U.S.S.G. § 1B1.3 is unconstitutional as applied to Petitioner, and it is therefore precluded by that portion of the appellate waiver that extends the waiver to any claim that "the . . . Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional . . . ." *Id.* For these reasons, the Court denies Grounds Five and Six as precluded by the appellate waiver.

Setting aside concerns of constitutional avoidance and at the risk of rewarding Respondent's hedging, these claims are likely meritless in any instance. As to Ground Five, Petitioner does not develop an argument for

---

[10]There is no indication here that Petitioner entered into the plea agreement unknowingly or involuntarily, notwithstanding his assertion to the contrary, ECF No. 15 at 4. During his Rule 11 hearing, Magistrate Judge Duffin confirmed, inter alia, that Petitioner had reviewed the agreement with Jensen and that Petitioner understood its ramifications. *See supra* Section 2.2.2; *see also infra* Section 4.2.1.

Case 2:22-cv-00356-JPS   Filed 03/06/24   Page 18 of 37   Document 41

why the *Taylor* decision is retroactive and applies in his case. *See generally* ECF No. 30. He was not charged with a violation of 18 U.S.C. § 924(c), the statute at issue in *Taylor*; as discussed *infra* Section 4.2.2, such a charge is not at all synonymous with application of the § 2D1.1(b)(1) firearm enhancement. From what the Court can discern, there is only a single case citing *Taylor* that even mentions § 2D1.1(b)(1), and it does not cite *Taylor* for the proposition Petitioner here proffers. *See United States v. Johnson,* No. 22-CR-254, 2023 U.S. Dist. LEXIS 197650, at *18 (E.D. Wis. Nov. 3, 2023) (citing *Taylor* only in support of the assertion that "[t]he ongoing struggle to define the term 'crime of violence' points up the difficulties of" distinguishing between violent and non-violent felonies"). In these circumstances, the Court sees no reason why Petitioner would be entitled to habeas relief based on the *Taylor* decision.

As to Ground Six, Petitioner argues that, through consideration of relevant conduct at sentencing, he was deprived of notice of the charges against him and an opportunity to defend himself, and/or that U.S.S.G. § 1B1.3 is unconstitutional because "that rule was never authorized by Congress." ECF No. 30 at 22, 24–25. But the Seventh Circuit has affirmed U.S.S.G. § 1B1.3 against both types of challenges. *United States v. Ebbole*, 917 F.2d 1495, 1501 (7th Cir. 1990); *United States v. Acosta*, 534 F.3d 574, 581–82 (7th Cir. 2008). Petitioner's filings raise no compelling argument for the Court to question the application in this case of the Seventh Circuit's prior rulings. Moreover, Petitioner specifically agreed that the Court could consider relevant conduct; that he now perhaps regrets agreeing to this term of his plea agreement, ECF No. 30 at 23 ("Chagoya did not expect the Court to hold him accountable for conduct that he did not partake in . . . ."), does not allow the Court to undo it. As to his contention that there was not

a preponderance of evidence to support the Court's finding that 5 to 15 kilograms of a controlled substance were attributable to him as relevant conduct for sentencing purposes, *id.* at 23–24, the Court specifically explained the facts underlying this conclusion. ECF No. 75 at 11–13 (citing Petitioner's "travels," "sending packages . . . to Texas," lack of tax returns or "income trail," and outstanding child support balance as supporting a conclusion that Petitioner was "deeply involved . . . with . . . trafficking in controlled substances" and that the "additional packages contained cocaine"). The Court is therefore not convinced that the information on which it relied in determining what relevant conduct to consider lacked "sufficient indicia of reliability to support its probable accuracy." *United States v. Townsend*, 73 F.3d 747, 751 (7th Cir. 1996) (quoting *United States v. Ewers*, 54 F.3d 419, 421 (7th Cir. 1995)).

### 4.2    Grounds One Through Four

That leaves the Court to address Grounds One through Four—which assert ineffective assistance of counsel on the part of Jensen—on their merits. For the reasons discussed herein, each of these grounds fails and will be denied.

"The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,' including when he enters a guilty plea" as well as at sentencing. *Lee v. United States*, 582 U.S. 357, 363 (2017) (quoting *Lafler v. Cooper*, 566 U.S. 156, 165 (2012) and citing *Hill v. Lockhart*, 474 U.S. 52, 58, 59 (1985)); *Eddmonds v. Peters*, 93 F.3d 1307, 1319 (7th Cir. 1996)).

"To demonstrate that counsel was constitutionally ineffective, a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' and that he was prejudiced as a result.'" *Lee*,

582 U.S. at 363 (quoting *Strickland v. Washington*, 466 U.S. 668, 692 (1984)). At the plea stage, specifically, *Strickland*'s prejudice prong requires the defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *Lafler*, 566 U.S. at 163 ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.") (citing *Missouri v. Frye*, 566 U.S. 134, 148 (2011) and *Hill*, 474 U.S. at 59).

The standard for ineffective assistance of counsel at sentencing is the same as that utilized during the plea stage. *Eddmonds*, 93 F.3d at 1319 (citing *Stewart v. Gramley*, 74 F.3d 132, 135 (7th Cir. 1996); *Strickland*, 466 U.S. at 690–91; and *Funchess v. Wainwright*, 772 F.2d 683, 688 (11th Cir. 1985)). At sentencing, "[c]ounsel must make a significant effort, based on reasonable investigation and logical argument, to mitigate his client's punishment." *Id.* (quoting *Gramley*, 74 F.3d at 135 and *Kubat v. Thieret*, 867 F.2d 351, 369 (7th Cir. 1989)).

"Counsel's work must be assessed as a whole; it is the overall deficient performance, rather than a specific failing, that constitutes the ground for relief." *Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005) (citing *Bell v. Cone*, 535 U.S. 685, 697 (2002); *Strickland*, 466 U.S. at 690; and *Holman v. Gilmore*, 126 F.3d 876, 881–84 (7th Cir. 1997)). Although the Court below addresses Petitioner's ineffective assistance of counsel arguments individually for organizational purposes, the Court nevertheless considers Jensen's performance holistically.

### 4.2.1    Inclusion and Consideration of Conspiracy Conduct

First, Petitioner argues that Jensen was ineffective both during the pre-trial stage and during sentencing for failing to object to the inclusion

and consideration of conspiracy conduct. Specifically, he writes that Jensen "deceived" him into signing the plea agreement, which aided the Government's "unlawful amending" of Count One from attempt to possess with intent to distribute cocaine to "[c]onspiracy with the intent to distribute." ECF No. 15 at 4; ECF No. 30 at 5–6.

Petitioner's contentions with respect to this Ground are refuted by the record. First, the Court rejects Petitioner's contention that his plea agreement was unlawfully amended to convert Count One into a conspiracy with intent to distribute charge. At his change of plea hearing, Petitioner expressly confirmed that he understood that he was entering a guilty plea to the charge of "knowingly and intentionally attempt[ing] to possess with intent to distribute 500 grams or more of a mixture and substance containing cocaine." CR-ECF No. 67 at 11. Neither the plea agreement itself, nor anything that occurred during the plea hearing, supports Petitioner's contention that Count One of the Indictment was somehow converted into a conspiracy with intent to distribute charge.

The record also does not support Petitioner's contention that he was "deceived" into signing the plea agreement. ECF No. 15 at 4. Indeed, nothing in the record suggests that Petitioner's plea was anything but knowingly, intelligently, and voluntarily made. The plea agreement itself expressly noted that, by signing it, Petitioner was entering into it "freely and voluntarily" after having "reviewed every part" of it with Jensen, including Attachment A, which described the underlying factual basis for the agreement. CR-ECF No. 58 at 2, 14. Roughly a week later, Petitioner confirmed at his change of plea hearing that he had "read and discuss[ed] the plea agreement with . . . Jensen before" signing it and that he understood its terms. CR-ECF No. 67 at 8. Magistrate Judge Duffin recited

on the record that the charge to which Petitioner was entering a plea of guilty was "Count 1, . . . charg[ing] that . . . [Petitioner] knowingly and intentionally attempted to possess with intent to distribute a controlled substance." *Id.* at 11. Petitioner confirmed that he "underst[ood] that [wa]s the charge to which he [was] pleading guilty." *Id.* Representations made to a court during a plea colloquy are presumptively true, *Hurlow v. United States*, 726 F.3d 958, 968 (7th Cir. 2013) (quoting *United States v. Chavers*, 515 F.3d 722, 724 (7th Cir. 2008)), and Petitioner fails to rebut that presumption.

Magistrate Judge Duffin additionally went through the elements of the offense, none of which involved conspiracy. CR-ECF No. 67 at 13 ("There are three elements ["that the Government would be required to prove beyond a reasonable doubt"]. First, that you knowingly attempted to possess cocaine; that you intended to distribute that substance to another person; and that you knew the substance was some kind of a controlled substance.").

The record also belies Petitioner's contention that Jensen was ineffective for not objecting to the inclusion and consideration of conspiracy-related conduct. To the contrary, Jensen complied with Petitioner's request in communicating to the Government Petitioner's objection to the inclusion in the plea agreement's attachment of facts about "the Tirado conspiracy." ECF No. 20-1 at 1 ("[Petitioner] also objects to the "Background" paragraph of Attachment A which talks about the Tirado conspiracy. If you could remove that, that would be great."); ECF No. 18 at 5 ("I objected to the [PSI] insofar as it used the term 'conspiracy' to describe [Petitioner's] conduct.").

In sum, the record does not support Petitioner's assertion that Jensen committed ineffective assistance of counsel with respect to Petitioner's

decision to plead guilty to Count One. As Jensen describes it, Petitioner was confronted with the decision whether to sign the plea agreement—which agreement the Government itself characterized as "quite generous," CR-ECF No. 75 at 20—and in turn "eliminate[] any minimum-mandatory sentence" and "allow[] the defense to argue for as little as five years in prison," or to go to trial and "run the risk of being convicted of one or more offenses which carried a twenty year minimum mandatory prison sentence." ECF No. 18 at 4. Petitioner opted for the former course of action and received a below guidelines sentence in turn. *See supra* Section 2.2.3. Petitioner has not demonstrated that Jensen's representation at this stage fell below an objective standard of reasonableness.

The same is true with respect to the sentencing phase of the proceedings. Jensen objected on Petitioner's behalf to the PSI's use of "the words 'conspirator' and 'conspiracy.'" CR-ECF No. 64-1 at 2 ("He is not charged with conspiracy, and he was not part of a conspiracy."). Although these arguments were ultimately unsuccessful, and the Court overruled Jensen's objection to the PSI on these grounds, that does not mean that Jensen was ineffective.

But even if Jensen's representation in this regard were deemed defective, Petitioner could not demonstrate the requisite prejudice, not only because Petitioner received a below guidelines sentence, but also because the Court explicitly noted on the record at sentencing that it "didn't rely on" any of the conspiracy-related facts to which Petitioner objected in determining Petitioner's sentence. CR-ECF No. 75 at 34. For these reasons, the Court will reject Ground One.

### 4.2.2 Application of U.S.S.G. § 2D1.1(b)(1)'s Firearm Enhancement

Petitioner next argues that Jensen was ineffective for failing, both in the pre-trial stage and during sentencing, to object to the application of U.S.S.G. § 2D1.1(b)(1)'s firearm enhancement. Petitioner notes that the Government had "agreed to drop the firearm counts in exchange for the plea," but that he was then nevertheless subject to the firearm enhancement, which he characterizes as being "no different than the §§ 922–924 charges." ECF No. 15 at 5.

In response to these allegations, Jensen avers that objecting to the application of U.S.S.G. § 2D1.1(b)(1)'s firearm enhancement "arguably [would] be a violation of the plea agreement." ECF No. 18 at 6. Indeed, the plea agreement provided that the parties would "recommend to the sentencing court that a two-level increase under Sentencing Guidelines Manual § 2D1.1(b)(1) is applicable to the offense level for the offense charged in Count One because four firearms were used or possessed in connection with the offense." CR-ECF No. 58 at 6. The plea agreement— specifically, in Attachment A—set forth the underlying factual background, including the fact that multiple firearms were discovered in a search of Petitioner's residence, in addition to plastic kilogram wrappers typically used in connection with drug trafficking. *Id.* at 16–17. By signing the agreement, Petitioner agreed that the Government would have "proven the[se] . . . facts beyond a reasonable doubt." *Id.* at 15.

"[I]t has long been the law in the Seventh Circuit . . . that the parties to a plea agreement are required to live up to the plea agreement's terms. Plea agreements are contracts." *United States v. Monti*, 477 F. Supp. 2d 943, 945 (N.D. Ill. 2007) (citing *Hartjes v. Endicott*, 456 F.3d 786, 790 (7th Cir. 2006)

and *United States v. Salazar*, 453 F.3d 911, 913 (7th Cir. 2006)). "The government and the defendant must fulfill the agreement that was expressly or impliedly made between them." *Id.* (citing *United States v. Atkinson*, 259 F.3d 648, 654 (7th Cir. 2001) and *United States v. Schilling*, 142 F.3d 388, 394–95 (7th Cir. 1998)).

Were Jensen to have reversed course and objected to the application of the firearm enhancement, as Petitioner now argues Jensen ought to have done, Petitioner, through Jensen's action, would be in breach of his express agreement in the plea agreement to "recommend . . . that a two-level increase under [U.S.S.G.] §2D1.1(b)(1) [be] appli[ed]." CR-ECF No. 58 at 6. Counsel is not ineffective for declining to take a course of action that would have the effect of breaching a plea agreement into which the parties knowingly, voluntarily, and intelligently entered. *See Seavers v. United States,* No. 14-cv-835-JPG, 2014 U.S. Dist. LEXIS 148716, at *5–8 (S.D. Ill. Oct. 20, 2014) (rejecting as frivolous the petitioner's argument that counsel was ineffective for failing to argue against application of §2D1.1(b)(1) firearm enhancement since the petitioner validly entered into a plea agreement in which the parties agreed that her offense level should be increased pursuant to that enhancement).

Similarly, by conceding those facts in the validly-entered plea agreement and confirming having done so at his plea colloquy, Petitioner waived his opportunity to dispute those facts at sentencing and on appeal. *United States v. Robinson*, 964 F.3d 632, 640 (7th Cir. 2020) ("[W]hen a defendant stipulates to conduct in a plea agreement, in a presentence report, and at his sentencing hearing, he waives any claim that he did not engage in that conduct." (citing *United States v. Young*, 908 F.3d 241, 247 (7th Cir. 2018); *United States v. Newman*, 148 F.3d 871, 876 (7th Cir. 1998); and

Case 2:22-cv-00356-JPS   Filed 03/06/24   Page 26 of 37   Document 41

*United States v. White*, 883 F.3d 983, 990 (7th Cir. 2018))); *United States v. Lewis*, 162 F. App'x 647, 651 (7th Cir. 2006). The Court will therefore reject Petitioner's contention that, as a factual matter, the firearm enhancement should not have applied to him and that, had Jensen been more diligent, he would have discovered as much. ECF No. 30 at 10 ("Had attorney Jensen interviewed [additional potential witnesses] he would have discovered and been able to prove that [Petitioner] was factually innocent of any firearms charges.").

Jensen is also correct that, contrary to Petitioner's repeated and mistaken assertion, the § 2D1.1(b)(1) firearm enhancement *is* different from a § 924(c) charge. ECF No. 15 at 5. Jensen avers that agreeing to the firearm enhancement "in exchange for not requiring [Petitioner] to plead guilty to the [§] 924(c) charge" was favorable because "[§] 924(c) carries a mandatory sentence that must be *consecutive* to any other sentence" while "[t]he firearm enhancement . . . is merely advisory." ECF No. 18 at 6.

Indeed, section 924(c) is not "a sentence-enhancement statute"—instead, it "defines a standalone crime." *Davila v. United States*, 843 F.3d 729, 731 (7th Cir. 2016). It provides that any person who "during and in relation to a[] . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, *shall*, *in addition to* the punishment provided for such . . . drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years." 18 U.S.C. § 924(c)(1)(A) (emphasis added). Meanwhile, the application of U.S.S.G. § 2D1.1(b)(1) merely factors into the advisory sentencing range calculation, which does not even bind the judge in sentencing. *See United States v. Ross*, 501 F.3d 851, 853 (7th Cir. 2007) ("The guidelines of course still "serve as a necessary starting point" in the sentencing court's deliberations, but they are advisory,

not mandatory." (quoting *United States v. Jointer*, 457 F.3d 682, 686 (7th Cir. 2006) and citing *United States v. Mykytiuk*, 415 F.3d 606, 607–08 (7th Cir. 2005))). In other words, it was clearly preferable to agree to the firearms enhancement if it meant avoiding facing the § 924(c) charge and its attendant mandatory minimum consecutive sentence. Such an arrangement is not only permissible, but ultimately favorable to Petitioner. *See Bardney v. United States,* Nos. 96 C 5024 and 92 CR 1043, 1997 U.S. Dist. LEXIS 13756, at *17–18 (N.D. Ill. Sept. 5, 1997) ("[A] sentencing court's ability to impose a § 2D1.1(b)(1) enhancement after a § 924(c)(1) acquittal has been universally embraced, with the exception of the Ninth Circuit.") (collecting cases); *see also United States v. Pollard*, 72 F.3d 66, 68 (7th Cir. 1995) ("The acquittal on the § 924(c) charge does not prohibit invoking the weapon enhancement under § 2D1.1(b)(1) of the guidelines.").

Accordingly, even if the Court were to assume arguendo that Jensen's performance was defective for his failure to object to the application of the firearm enhancement, the Court could not additionally conclude that Jensen's failure to object to the enhancement prejudiced Petitioner for the same reason discussed above—because the alternative would be having "to plead guilty to the [§] 924(c) charge" and incur a mandatory five-year consecutive minimum. ECF No. 18 at 6; 18 U.S.C. § 924(c)(1)(A).[11]

---

[11]And in any event, even if the firearm enhancement had been removed and, hypothetically, Petitioner had been able to avoid having to plead to the § 924(c) charge, the USPO has advised the Court that his base offense level would have been reduced to 27, correlating with an advisory sentencing range of 100 to 125 months. The sentence he *did* receive—100 months—still falls at the low end of that range.

In light of the foregoing, the Court concludes that Jensen did not commit ineffective assistance of counsel with respect to the application of U.S.S.G. § 2D1.1(b)(1)'s firearm enhancement. Accordingly, the Court will deny Ground Two.

### 4.2.3 Constitutionality of U.S.S.G. § 1B1.3

Petitioner also asserts that Jensen was ineffective for failing to object to, and raise as an issue on appeal, the constitutionality of U.S.S.G. § 1B1.3 as applied to his case. He writes that Jensen "refused to file the requested appeal on this claim, because he said the courts would not entertain the issue." ECF No. 15 at 7. He also asserts that Jensen insufficiently advised him regarding § 1B1.3's implications and that he would not have entered into the plea agreement had he known that he could be "sanction[ed] for . . . uncharged or unconvicted offenses." *Id.* at 6.

The Court will first reject Petitioner's latter contention as unsupported by the record. The plea agreement that Petitioner signed and testified to having reviewed and understood explicitly put him on notice that "pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty." CR-ECF No. 58 at 5. As noted previously, Petitioner testified at his change of plea hearing that he understood the plea agreement's terms and ramifications. CR-ECF No. 67 at 8. He also testified that he had discussed with Jensen "how the[] Advisory Sentencing Guidelines might apply" to his case. *Id.* at 14. There is thus no support in the record for Petitioner's contention that he did not know that U.S.S.G. § 1B1.3 could apply to him and essentially "sanction" him for uncharged conduct. ECF No. 15 at 6.

The Court next rejects Petitioner's assertion that Jensen was ineffective for failing to object at the plea stage as to the constitutionality of U.S.S.G. § 1B1.3. As the Court noted *supra* Section 4.2.2, counsel is not ineffective for declining to take a course of action that would have the effect of breaching a plea agreement into which the parties knowingly, voluntarily, and intelligently entered. *See Seavers*, 2014 U.S. Dist. LEXIS 148716, at *5–8; CR-ECF No. 58 at 10 ("The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that . . . the . . . Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional . . . .") and 5 ("The parties acknowledge, understand, and agree that pursuant to [U.S.S.G.] § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range . . . .").

The Court will also reject Petitioner's argument that Jensen was ineffective for failing to proffer this argument on appeal. "While 'the accused has the ultimate authority' to decide whether to 'take an appeal,' the choice of what specific arguments to make within that appeal belongs to appellate counsel." *Garza v. Idaho*, 139 S. Ct. 738, 746 (2019) (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983) and citing *McCoy v. Louisiana*, 584 U.S. 414, 422 (2018)). Typically, an attorney "who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). Even in cases in which a defendant has signed an appellate waiver, "directing counsel to file a notice of appeal [is not] *necessarily* . . . a quixotic or frivolous request" in light of the fact that the prosecution can "forfeit[] or waive[] the waiver." *Id.* at 745 (citing *United States v. Story*, 439 F.3d 226, 231 (5th Cir. 2006)) (emphasis added).

In this case, however, Petitioner's alleged request that Jensen proffer on appeal a challenge to the constitutionality of U.S.S.G. § 1B1.3 was, indeed, a "frivolous request" because that issue plainly falls within the scope of the applicable appellate waiver, and the Government had not given any indication that it would forfeit or waive the appellate waiver. *Id.*; CR-ECF No. 58 at 10. Moreover, the argument is not "sufficiently foreshadowed in existing case law" such that Jensen could be deemed ineffective for failing to proffer it. *Bridges v. United States*, 991 F.3d 793, 804 (7th Cir. 2021) (citing *Shaw v. Wilson*, 721 F.3d 908, 917 (7th Cir. 2013) and *United States v. Carthorne*, 878 F.3d 458, 465–66 (4th Cir. 2017)). Jensen avers that he is not, and was not at that time, aware of "any case holding that U.S.S.G. § 1B1.3 . . . is unconstitutional or otherwise invalid." ECF No. 18 at 6. Nor has the Court found such a case, in-circuit or otherwise, which would have signaled to Jensen the real possibility of a meritorious challenge to the constitutionality of § 1B1.3 as applied to Petitioner's case.

For all these reasons, the Court will deny Ground Three.

### 4.2.4 Motions to Suppress and Motion for *Franks* Hearing

Lastly, Petitioner argues that Jensen was ineffective for failing to appeal Magistrate Judge Duffin's adverse rulings on Petitioner's motions to suppress and for a *Franks* hearing. Petitioner writes that he "made it very clear" that he wanted Jensen to "appeal the Fourth Amendment issue" and that Jensen placed him "into a deliberate catch-22 position to forf[ei]t his appeal." ECF No. 15 at 7. The Court broadly construes this ground for relief to include arguments that Jensen was ineffective for both failing to object to Judge Duffin's report and recommendation, and for failing to appeal the denial of the motions to suppress and for a *Franks* hearing post-sentencing.

This argument is plainly meritless. For one, the time to object to Magistrate Judge Duffin's report and recommendation on these motions elapsed roughly five months before Jensen was ever appointed to represent Petitioner. CR-ECF No. 43 (Jensen notice of appearance dated July 9, 2020); CR-ECF text order dated November 25, 2020 (denying motion filed by Jensen as untimely and noting that "[a]ll pretrial motions were due no later than January 23, 2020"). Additionally, and to the extent that Petitioner suggests that Jensen should have renewed the motions himself—after Hart declined to object to Judge Duffin's recommendation that they be denied—Jensen communicated to Petitioner that the Court had communicated to him that it was "not . . . inclined to hear any further motions" on the suppression issue. ECF No. 30 at 18–19. Jensen passed along the Court's acknowledgement that it would "consider whatever [is] file[d] before making any decision" with respect to whether to permit an untimely objection to a pretrial motion ruling, *id.* at 19, but it was well within Jensen's professional discretion not to renew pretrial issues that had already been litigated by Hayes and examined by Hart months prior. *See Strickland*, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ."); *see also United States v. Suggs*, 703 F. App'x 425, 427 (7th Cir. 2017) (finding no abuse of discretion for trial court to refuse to entertain untimely pretrial motion when "new counsel had access to the discovery materials for five months").

Similarly, any argument that Jensen was ineffective for failing to appeal to the Seventh Circuit the earlier denial of Petitioner's motions to suppress and for a *Franks* hearing is meritless. As Jensen notes, Petitioner "did not enter a conditional plea under Rule 11(2)" such that he would have

reserved the opportunity to appeal the denial of his motion to suppress and motion for a *Franks* hearing. ECF No. 18 at 8. "An unconditional guilty plea precludes the challenge to the denial of a motion to suppress because the 'guilty plea constitutes a waiver of non-jurisdictional defects occurring prior to the plea . . . . This waiver includes Fourth Amendment claims.'" *United States v. Adigun*, 703 F.3d 1014, 1018–19 (7th Cir. 2012) (quoting *United States v. Cain*, 155 F.3d 840, 842 (7th Cir. 1998) and citing *United States v. Herrera*, 265 F.3d 349, 351 (6th Cir. 2001)).

A defendant may enter into a conditional plea only "[w]ith the consent of the court and the government." Fed. R. Crim. P. 11(a)(2). Such a plea "reserve[es] in writing the right to have an appellate court review an adverse determination of a specified pretrial motion." *Id.* Petitioner did not enter into a conditional plea, and he does not attempt to argue otherwise. *Cf. Adigun*, 703 F.3d at 1019 ("[The defendant] has argued that his guilty plea should be construed as conditional, preserving the right to appeal the district court's suppression rulings."). Moreover, as discussed extensively above, Petitioner waived his right of appeal on issues such as this one, told Jensen that he did not wish to file any appeal in his case, and "never communicated to [Jensen] that he had changed his mind." ECF No. 18 at 8. It was therefore reasonable for Jensen to conclude that he was not obligated to file on Petitioner's behalf a notice of appeal on the denial of the pretrial motions.

For these reasons, the Court concludes that Jensen was not ineffective for failing to object to and appeal the adverse decision on Petitioner's motions to suppress and for a *Franks* hearing. Accordingly, the Court will deny Ground Four.

5.     MOTIONS TO AMEND AND TO PROCEED TO RULING

Petitioner moves to amend his motion "to change the legal theory, correct technical deficiencies[,] and expand the facts." ECF No. 33 at 2. He later specifies—while agreeing that his motion "is fully briefed and ready for consideration" and asking the Court to proceed to ruling—that his proposed amendment relates to Ground Two of his amended motion. ECF No. 36 at 2–3. Petitioner's motion to amend will be denied.

The Court warned Petitioner in its order screening his amended motion that, in light of Petitioner's "flurry of related filings," "any further filings" on Petitioner's part "attempt[ing] to add new grounds for habeas relief, or [to] challenge the Court's screening decisions . . . will be viewed unfavorably." ECF No. 17 at 26–27. His recent motions to amend and to proceed to ruling violate the spirit of that warning. Further, Petitioner has had an abundance of time within which to present his grounds for relief and arguments. His motion to amend comes nearly a full year after the filing of his amended motion.

Petitioner seeks to assert a new legal theory that is a slightly different version of what he is already asserting as Jensen's constitutional ineffectiveness in Ground Three (and possibly Grounds One and Six as well). Compare Ground Three ("Attorney Jensen provided ineffective assistance (1) during plea negotiations and (2) at sentencing by failing to object that U.S.S.G. § 1B1.3 [which allows consideration of relevant conduct] is unconstitutional, and by failing to directly appeal on the same basis[.]") *with* ECF No. 33 at 2 (seeking to explore an ineffective assistance of counsel claim for Jensen's failure to "object to the district court's finding on drug quantity based on pure speculation and unsupported conjecture") and 9 ("The fact [that] . . . Jensen did not object to the district court's findings . . .

based on the Gov[ernment's] speculation and unsupported conjecture that these empty, unused packages containing no cocaine residue, in an 'attempted possession' case, not a 'conspiracy case' . . . .); *see also* ECF No. 30 at 22–28 (discussing Ground Six and consideration of relevant conduct at sentencing).

As for those facts that Petitioner wishes to "expand on," he includes pages of the sentencing transcript, which are already in the record available to the Court. ECF No. 33 at 4–9. The facts that might support the legal argument Petitioner now wishes to add have been available to him from the time he filed both his original and amended § 2255 motions. He had numerous opportunities to put forth this legal theory in his amended motion and briefing in support thereof. Petitioner has provided no compelling explanation for why, after all this, he now wishes to change course. In sum, the Court discerns nothing new in Petitioner's motion that would warrant amendment of the operative motion.

Even if the Court accepted this ground for relief, it would be meritless, because Jensen *did* object to the USPO's recommendation as to drug quantity findings for purposes of considering relevant conduct, and renewed that recommendation at the sentencing hearing. CR-ECF No. 64-1 at 5–6; CR-ECF No. 64 at 8–9; CR-ECF No. 75 at 5. Jensen did what Petitioner says he should have done, and therefore cannot be found ineffective.

Accordingly, the Court will deny Petitioner's motion for leave to further amend his § 2255 motion. The motion to proceed to ruling will be denied as moot, as, obviously, the Court has reached the merits of his § 2255 motion in this Order.

6. **CONCLUSION**

For the reasons discussed herein, the Court must deny Petitioner's amended § 2255 motion. Additionally, his motion to amend will be denied, and his motion to proceed to ruling is denied as moot.

The Court must address one additional matter. Under Rule 11(a) of the Rules Governing Section 2255 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The petitioner "need not show he is likely to prevail, but he must show that 'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014) (quoting *Slack*, 529 U.S. at 484).

In light of the well-settled principles governing the disposition of Petitioner's grounds for relief, as outlined above, the Court cannot fairly conclude that reasonable jurists would debate whether his amended motion should be decided differently; as a consequence, the Court must deny him a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Petitioner Mario Chagoya's amended motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, ECF No. 15, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Petitioner Mario Chagoya's motion to amend, ECF No. 33, be and the same is hereby **DENIED**;

IT IS FURTHER ORDERED that Petitioner Mario Chagoya's motion to proceed to ruling, ECF No. 36, be and the same is hereby **DENIED as moot**;

IT IS FURTHER ORDERED that a certificate of appealability be and the same is hereby **DENIED**; and

IT IS FURTHER ORDERED that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 6th day of March, 2024.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.